UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL ‘O’ JS-6**

| | | | |
|---|---|---|---|
| Case No. | 5:26-cv-04683-CAS-DTBx | Date | October 19, 2026 |
| Title | Manuel Espinoza v. Worldpac, LLC et al. | | |

| | |
|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER |

| | | |
|---|---|---|
| Catherine Jeang | Amy Diaz | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Jeffrey Bils | Jaime Laurent<br>Jessica Quarless |

**Proceedings:** PLAINTIFF’S NOTICE OF MOTION AND MOTION FOR ORDER REMANDING ACTION TO STATE COURT (Dkt. 15, filed September 16, 2026)

## I. INTRODUCTION

On May 7, 2026, plaintiff Manuel Espinoza (“Plaintiff”) filed a class action complaint in San Bernadino County Superior Court against Worldpac, LLC, Worldpac, Inc., and Does 1 through 50, inclusive (collectively, “Defendants”). Dkt. 1-3 (“Compl.”). Plaintiff asserted nine claims for relief against all defendants: (1) failure to pay minimum and straight time wages, in violation of Cal. Lab. Code §§ 204, 1194, 1194.2, 1197, and 1197.1; (2) failure to pay overtime wages, in violation of Cal. Lab. Code §§ 1194 and 1198; (3) failure to provide meal periods, in violation of Cal. Lab. Code §§ 226.7 and 512; (4) failure to authorize and permit rest periods, in violation of Cal. Lab. Code § 226.7; (5) failure to timely pay final wages at termination, in violation of Cal. Lab. Code §§ 201-203; (6) failure to provide accurate itemized wage statements, in violation of Cal. Lab. Code § 226; (7) failure to indemnify employees for expenditures, in violation of Cal. Lab. Code § 2802; (8) failure to produce requested employment records, in violation of Cal. Lab. Code §§ 226 and 1198.5; and (9) unfair business practices, in violation of California’s Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*. Id.

On August 17, 2026, defendant removed plaintiff’s action to this Court on the basis of diversity jurisdiction, 28 U.S.C. § 1332(a), and the Class Action Fairness Act of 2005 (“CAFA”), 28 U.S.C. § 1332(d). Dkt. 1 (“Notice of Removal”).

On September 16, 2026, plaintiff filed the instant motion to remand the action to San Bernadino Superior Court. See Dkt. 15 (“Mot.”) at 2. Plaintiff concurrently filed a request for judicial notice. Dkt. 16 (“RJN”).[1] On September 28, 2026, defendant filed an opposition. Dkt. 18 (“Opp.”). On October 5, 2026, plaintiff filed a reply. Dkt. 19 (“Reply”).

On October 19, 2026, the Court held a hearing. Having carefully considered the parties’ arguments and submissions, the Court finds and concludes as follows.

## II. BACKGROUND

### A. Plaintiff’s Complaint

Plaintiff is a resident of Victorville, California. Compl. ¶ 7. Plaintiff brings his claims for relief on behalf of himself and certain employees of defendants. Id. ¶ 23. The putative class, estimated to be greater than 40 individuals, consists of “[a]ll persons who worked for any [d]efendant in California as an hourly-paid or non-exempt employee at any time during the period beginning four years before the filing of the initial complaint in this action and ending when notice to the [c]lass is sent.” Id.

---

[1] Plaintiff requests that the Court take judicial notice of fourteen state court class action complaints and related district court orders. See RJN. Pursuant to the Federal Rules of Evidence, the Court may take judicial notice of a fact “that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.” Fed. R. Evid. 201(b)(2). “[A] court may take judicial notice of the existence of another court's opinion or of the filing of pleadings in related proceedings; the Court may not, however, accept as true the facts found or alleged in such documents.” Peel v. BrooksAmerica Mortg. Corp., 788 F. Supp. 2d 1149, 1158 (C.D. Cal. 2011) (citing Wyatt v. Terhune, 315 F.3d 1108, 1114 (9th Cir. 2003)); see also Lee v. City of Los Angeles, 250 F.3d 668, 690 (9th Cir. 2001) (“On a Rule 12(b)(6) motion to dismiss, when a court takes judicial notice of another court's opinion, it may do so ‘not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity.’” (quoting S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd., 181 F.3d 410, 426-27 (3rd Cir. 1999))). Defendants do not appear to oppose plaintiff’s request. Accordingly, the Court GRANTS plaintiff’s request for judicial notice.

Plaintiff is informed and believes that defendants Worldpac, LLC and Worldpac, Inc. are and at all relevant times were business entities conducting business in California. Id. ¶ 9.

Defendants Does 1 through 50, inclusive, were residents of, doing business in, availed themselves of the jurisdiction of, and/or injured plaintiff and a significant number of the putative class in California. Id. ¶ 10.

Plaintiff worked for defendants in San Bernardino County, California as an hourly-paid, non-exempt employee from approximately August 2016 to approximately November 2025. Id. ¶ 7. Defendants repeatedly and frequently scheduled plaintiff to work at least five days in a workweek and at least eight hours per day, but plaintiff also worked more than eight hours in a workday and more than forty hours in a workweek. Id. ¶ 13. Throughout plaintiff's employment, defendants, at times, failed to pay plaintiff for all hours worked (including minimum, straight time, and overtime wages), failed to provide plaintiff with legally compliant meal periods, failed to authorize and permit plaintiff to take rest periods, failed to timely pay all final wages to plaintiff when defendants terminated plaintiff's employment, failed to furnish accurate wage statements to plaintiff, failed to indemnify plaintiff for expenditures, and failed to produce requested employment records. Id.

Defendants, "at times," failed to pay Plaintiff and "some of, but not necessarily all of," the class for all hours worked, including minimum, straight time, and overtime wages. Id. ¶ 15.

Defendants required plaintiff and "some of, but not necessarily all of," the class to work in excess of five consecutive hours a day without providing a 30-minute, uninterrupted, and duty-free meal period for every five hours of work, or without compensating plaintiff and "some of, but not necessarily all of," the class for all missed meal periods that were not provided by the end of the fifth hour of work or tenth hour of work. Id. ¶ 16.

Defendants, "at times," required plaintiff and "some of, but not necessarily all of," the class to work in excess of four consecutive hours a day without defendants authorizing them to take a 10-minute, uninterrupted, duty-free rest period for every four hours of work, or without compensating plaintiff and "some of, but not necessarily all of," the class for rest periods. Id. ¶ 17.

Defendants, "at times," willfully failed and refused to timely pay plaintiff and "some of, but not necessarily all of," the class all final wages due at their termination of employment. Id. ¶ 18. Defendants' failure to timely pay plaintiff's final wages when plaintiff's employment terminated was not a single, isolated incident, but was instead consistent with defendants' practices that applied, "at times," to plaintiff and "some of, but not necessarily all of," the class. Id.

Defendants failed, "at times," to furnish plaintiff and "some of, but not necessarily all of," the class with accurate, itemized wage statements showing all applicable hourly rates, and all gross and net wages earned. Id. ¶ 19.

Defendants have wrongfully required plaintiff and "some, but not necessarily all of," the class to pay expenses that they incurred out-of-pocket, in direct discharge of their duties for defendants. Id. ¶ 20.

Plaintiff sent written requests through plaintiff's counsel to defendants for plaintiff's personnel file, pay records, wage statements, timekeeping records, and other employment-related documents pursuant to California Labor Code §§ 226 and 1198.5. Id. ¶ 22. However, defendants failed to timely produce the requested employment records. Id.

**B. Declaration of Christina Pishko**

Attached to its notice of removal, defendant submits the declaration of Christina Pishko ("Pishko"). Dkt. 1-1 ("Pisko Decl.") ¶ 1. Pishko is "the Director of HR Corporate" for defendant Worldpac, LLC ("WP LLC"). Id. Prior to her role as Director of HR Corporate, Pishko was a Senior Human Resources Manager for defendant Worldpac, Inc., which is Worldpac, LLC's predecessor. Id. Pishko states that she has "access to and regularly use WP LLC's personnel, payroll, HRIS, timekeeping, wage-statement, corporate, and employee-record systems." Id. ¶ 3. Pishko "also ha[s] access to, and regularly review[s] when necessary, employment and corporate records historically maintained by Worldpac, Inc. and transferred to WP LLC as part of the business transition." Id.

Pishko states that based on her review of "data maintained in WP LLC's payroll, HRIS, personnel, and timekeeping systems, including historical employment data transferred from Worldpac, Inc.," she found that approximately 2,384 non-exempt hourly

employees worked in California for defendants between May 7, 2022 and May 16, 2026. Id. ¶ 14. Pishko further states that those employees worked approximately 174,041 workweeks during that period, and their average hourly rate of pay was approximately $23.09 per hour. Id. Based on her review of payroll and timekeeping records, Pishko found that "[t]he substantial majority of non-exempt hourly employees worked full-time schedules and typically worked eight (8) hours per day and forty (40) hours per week." Id. ¶ 15. Pishko states that approximately 896 non-exempt California employees separated from employment between November 2, 2024, through May 16, 2026. Id. ¶ 16. Finally, Pishko states that approximately 896 non-exempt California employees received wage statements during approximately 16,933 pay periods between June 30, 2025, and May 15, 2026. Id. ¶ 17.

## III. LEGAL STANDARD

Remand may be ordered either for lack of subject matter jurisdiction or for any defect in removal procedure. See 28 U.S.C. § 1447(c). The Court strictly construes the removal statutes against removal jurisdiction, and jurisdiction must be rejected if there is any doubt as to the right of removal. See Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).

Removal is proper where the federal courts have original jurisdiction over an action brought in state court. 28 U.S.C. § 1441(a). Pursuant to 28 U.S.C. § 1332(a), federal courts have original jurisdiction over state law actions where (1) the amount in controversy exceeds $75,000, and (2) the action is between parties of diverse citizenship. When a complaint filed in state court alleges on its face "damages in excess of the required jurisdictional minimum," the amount pled controls unless it appears "to a legal certainty" that the claim is for less than the jurisdictional amount. Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 402-404 (9th Cir. 1996). Conversely, where "it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold." Urbino v. Orkin Servs. of California, Inc., 726 F.3d 1118, 1122 (9th Cir. 2013).

Pursuant to 28 U.S.C. § 1332(d), CAFA grants federal courts jurisdiction over certain class actions if (1) "the class has more than 100 members"; (2) "the parties are minimally diverse"; and (3) "the amount in controversy exceeds $5 million." Dart

Cherokee Basin Operating Co., LLC v. Owens, 574 U.S. 81, 84-85 (2014). There is no presumption against removal jurisdiction in CAFA cases; however, the defendant still bears the burden of establishing removal jurisdiction. Id. at 554. CAFA's "minimal diversity" requirement means that "a federal court may exercise jurisdiction over a class action if 'any member of a class of plaintiffs is a citizen of a State different from any defendant.'" Mississippi ex rel. Hood v. AU Optronics Corp., 571 U.S. 161, 165 (2014) (quoting 28 U.S.C. § 1332(d)(2)(A)). Where, as here, the amount in controversy is contested, and the plaintiff does not plead a specific amount in controversy, the defendant's evidentiary burden in opposing a motion to remand depends on whether plaintiff has mounted a facial or factual attack on defendant's jurisdictional allegations. Salter v. Quality Carriers, Inc., 974 F.3d 959, 964 (9th Cir. 2020). A facial attack "accepts the truth of the [defendant's] allegations but asserts that they are insufficient on their face to invoke federal jurisdiction," thus calling for the Court to "determine[] whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." Id. (quoting Leite v. Crane Co., 749 F.3d 1117, 1121 (9th Cir. 2014)). In contrast, a factual attack "contests the truth of [defendant's] factual allegations, usually by introducing evidence outside the pleadings." Id. "When a plaintiff mounts a factual attack, the burden is on the defendant to show, by a preponderance of the evidence, that the amount in controversy exceeds the $5 million jurisdictional threshold." Harris v. KM Indus., Inc., 980 F.3d 694, 699 (9th Cir. 2020). Although a plaintiff may present evidence in support of a factual attack, they "need only challenge the truth of the defendant's jurisdictional allegations by making a reasoned argument as to why any assumptions on which they are based are not supported by the evidence." Id. at 700.

## IV. DISCUSSION

Plaintiff argues that remand is warranted because defendant fails to show, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional thresholds set by CAFA and 28 U.S.C. § 1332(a), respectively. See Mot.

### A. CAFA

With respect to plaintiff's class claims, plaintiff argues that defendants have not satisfied their burden of proving that the amount in controversy exceeds $5 million. See Mot. at 14. First, plaintiff argues that defendants generally fail to "offer any affirmative evidence" of their assumed violation rates. Id. at 15. Plaintiff argues that defendants' reliance on the Pishko Declaration is insufficient because the declaration "presents

nothing more than a series of bare, conclusory statements setting forth the number of employees, the number of those employees whose employment terminated, the number of workweeks, the average hourly rate, and the pay frequency." Id. at 14-15. Plaintiff also argues that defendant fails to explain how its violation rate estimates are reasonable in light of the fact that the complaint does not allege specific violation rates, but instead alleges that violations occurred "at times," involving "some of, but not necessarily all of the [c]lass." Id. at 15-16.

Plaintiff also argues that defendants' assumed violation rates are unreasonable with respect to each of the complaint's claims. First, plaintiff argues that defendants' $1,507,195.06 valuation of the class's overtime and unpaid wages claims is unreasonable. Id. at 17-18. Plaintiff argues that defendants' assumption that 25% of the class experienced a one-hour overtime violation once per week is "arbitrary" in light of the complaint's "limiting language." Id. (quoting Duran v. Allegis Glob. Sols., Inc., 2021 WL 3281073, at *3 (N.D. Cal. Aug. 2, 2021)). Second, plaintiff argues that defendants fail to demonstrate the reasonableness of their estimates that the meal and rest period violations place $1,004,651.67 and $1,004,651.67 in controversy, respectively. Id. at 18-19. Plaintiff argues that defendants' assumption that 25% of the class experienced a meal and rest period violation once per week is "pulled from thin air" and unsupported by the complaint's "periodic-type language." Id. at 20-21. Third, plaintiff argues that defendants unreasonably estimate that all 106 class members who were terminated since November 2, 2024, are entitled to the maximum 30-day waiting time penalty, given that the complaint merely alleges that "*some*" of the class is entitled to "*up to*" the 30-day maximum. Id. at 22 (emphasis in original). Fourth, plaintiff argues that defendants' estimate that 20% of the class suffered a wage record violation "*every single pay period*" is not supported by the complaint. Id. at 23 (emphasis in original). Fifth, plaintiff argues that the defendants fail to explain "why it is appropriate to assume that 20% of class members spent $5 per month on business expenses that were not reimbursed." Id. Finally, plaintiff argues that defendants' valuation of attorneys' fees is unreasonable. Plaintiff argues that defendant may not "merely assum[e]" that 25% of the total award is the benchmark in this class action. Id. at 24. Plaintiff also argues that even if the 25% assumption were reasonable, it is applied to valuations of claims that are unreasonable, and therefore defendants' attorneys' fees calculation is unsubstantiated. Id.

In opposition, defendants argue that they are not required to present affirmative evidence of violation rates under the Ninth Circuit's holding in Perez v. Rose Hills Co.,

131 F.4th 804 (9th Cir. 2025). Opp. at 6. Instead, defendants argue that Perez merely requires them to rely on reasonable assumptions. See id. at 11-12. Defendants argue that they "properly relied upon both [p]laintiff's allegations and competent evidence regarding the underlying workforce data" to demonstrate that the amount in controversy exceeds $5 million. Id. at 8. Defendants contend that their "conservative" violation rates are reasonable based on plaintiff's allegations that violations occurred "at times" and with respect to "some, but not necessarily all of" the class. See id. at 12-14. Defendants argue that their use of 20% to 25% violation rates are "reasonable and conservative" and "reflect the possibility that the majority of putative class members did not experience a violation" during a given period of time, consistent with the complaint's allegations. Id. at 13, 15. Defendants argue that, in contrast, plaintiff misreads Ninth Circuit caselaw and largely relies on district court cases that predate Perez. Id. at 9-10. Defendants further argue that plaintiff "offers no declaration, no competing calculations, no alternative violation rates, and no evidence demonstrating that Defendant's assumptions are unreasonable." Id. at 7. Finally, defendants argue that that "an assumption is not unreasonable simply because another equally valid assumption may exist." Id. at 14 (quoting Perez, 131 F.4th at 809).

Defendants also make several claim-specific arguments. Defendants argue that its waiting time calculations are reasonable, in part because the underlying Labor Code provision "does not calculate the penalty according to the amount or frequency of the underlying unpaid-wage violation." Id. at 16; see Cal. Lab. Code § 203(a). Instead, defendants argue that the statute assumes that "separated employees . . . experienced at least one willful failure to pay final wages and that the resulting penalty remained outstanding" for the statute's 30-day maximum period. Id. at 16-17. Moreover, defendants argue that their assumption is consistent with the fact that plaintiff "placed [up to 30] days of waiting-time penalties" at issue in his complaint. Id. at 17.

With respect to attorneys' fees, defendants argue that its calculations reflect "a reasonable estimate of the fees placed at stake by the prosecution of a putative wage-and-hour class action involving nine causes of action, a proposed class of approximately 2,384 employees, a four-year class period, contested class certification, extensive written discovery, depositions, expert discovery, dispositive motion practice, and trial." Id. at 20. Defendants argue that plaintiff has not provided any data relating to plaintiff's counsel's fees, budgets, staffing, nor has plaintiff provided any other data to support a "competing"

estimate. See id. at 20. Finally, defendants argue that its calculations are consistent with the benchmarks that courts use to assess fees in common-fund class actions. Id. at 20.

In reply, plaintiff contends that his arguments are consistent with Perez, “which stated that ‘if a violation rate cannot be justified by the allegations in the [complaint], it must be justified by something else.’” Reply at 5 (quoting Perez, 131 F.4th at 809). Plaintiff clarifies that its argument is not that defendants’ calculations are inherently unreasonable, nor is it asking defendants to “identify and “calculate the exact frequency of violations.” Id. at 9-10, 12. Instead, plaintiff contends that defendants have failed to adequately explain their reasoning. Id. Plaintiff argues that defendants’ opposition fails to present any evidence in support of their assumed violations rates. Id. at 14-19. Plaintiff also argues that defendants incorrectly “attempt to shift the burden of proof to [p]laintiff to demonstrate that [d]efendant’s assumed violation rates are unreasonable.” Id. at 7. Plaintiff contends that he need not rebut defendant’s evidence with his own evidence to prevail on a motion to remand. Id. at 11.

Because there is no dispute as to the size of the putative class or the presence of minimal diversity,[2] the Court examines only the amount in controversy to determine if CAFA’s requirements are met. In estimating the amount in controversy to establish CAFA jurisdiction, “the defendant is permitted to rely on ‘a chain of reasoning that includes assumptions.’” Perez v. Rose Hills Co., 131 F.4th 804, 808 (9th Cir. 2025) (quoting Arias v. Residence Inn by Marriott, 936 F.3d 920, 925 (9th Cir. 2019)). “While those assumptions ‘cannot be pulled from thin air,’ they can be ‘founded on the allegations of the complaint’ and do not necessarily need to be supported by evidence.” Id. (quoting Ibarra v. Manheim Invs., Inc., 775 F.3d 1193, 1199 (9th Cir. 2015); Arias, 936 F.3d at 925). “The district court’s task is simply to determine if the defendant’s ‘reasoning and underlying assumptions are reasonable.’” Id. (quoting Jauregui v.

---

[2] The Court notes that plaintiff’s complaint alleges that the proposed class will be comprised of more than 40 individuals. See Compl. ¶ 28(a). This estimate does not necessarily meet CAFA’s 100-member minimum requirement. See 28 U.S.C. § 1332(d)(5)(B). However, in their notice of removal, defendants state that their internal records demonstrate that during the relevant period, they employed “at least 2,384 non-exempt hourly California employees.” Notice of Removal at 8-9. Accordingly, defendants argue that plaintiff’s proposed class meets CAFA’s class size requirement. Id. Plaintiff does not dispute this assertion.

Roadrunner Transportation Servs., Inc., 28 F.4th 989, 993 (9th Cir. 2022)). "Where a defendant's assumption is unreasonable on its face without comparison to a better alternative, a district court may be justified in simply rejecting that assumption and concluding that the defendant failed to meet its burden." Jauregui, 28 F.4th at 996.

The Court concludes that defendants' assumptions are not reasonable with respect to plaintiff's third claim for meal period violations and his fourth claim for rest period violations. Defendants calculate that the amount in controversy for each of these claims is $1,004,651.67 (collectively, $2,009,303.34). See Notice of Removal at 13-14. Defendants reach these amounts by using "a conservative estimate of one missed meal [or rest] period per workweek[,] applying the average hourly rate," and assuming a 25% violation rate. Id.

California Labor Code § 226.7(c) provides that an employee who experiences a meal or rest period violation is entitled to "one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest . . . period is not provided." Cal. Lab. Code § 226.7(c). An employee is entitled to a meal period after five hours of work, unless the total work period of the day "is no more than six hours" and the employee waives the meal period. See Cal. Lab. Code § 512(a). After ten hours of work, an employee is entitled to a second meal period, unless the total work period of the day "is no more than 12 hours" and the employee waives the second meal period. See id. Further, an employee is entitled to a rest period for every four hours of work "or major fraction thereof," unless the employee's "total daily work time is less than [3.5] hours." See IWC Wage Orders § 12.

Defendants' assumptions with respect to plaintiff's meal and rest period claims are unreasonable because defendants fail to account for the number of shifts worked by putative class members that would qualify for meal and rest periods. "Whether it is reasonable to assume one [meal or rest period] violation per class member per week based on the ambiguous but limiting language in the complaint depends on how many breaks employees were entitled to." See Lopez v. Advanced Drainage Sys., Inc., 777 F. Supp. 3d 1100, 1108 (N.D. Cal. 2025) (finding defendant's assumptions unreasonable where the complaint alleged that defendant "at times" failed to provide "some of, but not necessarily all" of the proposed class with rest and meal breaks). To determine the number of shifts entitling class members to meal periods, defendants must consider the number of shifts worked exceeding five hours and the number of shifts worked exceeding

ten hours; to determine the number of shifts entitling class members to rest periods, defendants must incorporate the number of shifts worked exceeding four hours.

As defense counsel represented at the October 19, 2026 hearing, defendants' meal and rest period violation assumptions are based on Ms. Pishko's statement that "the substantial majority of non-exempt hourly employees worked full-time schedules and typically worked eight (8) hours per day and forty (40) hours per week." Pishko Decl. ¶ 15. However, defendants "should not substitute an assumption for data when that data is easily accessible to it." See Nisbet v. S. Tire Mart, LLC, No. 5:24-CV-07653, 2025 WL 1135091, at *5 (N.D. Cal. Apr. 16, 2025). The number of qualifying shifts "is almost certainly easily determined from employment records in [defendants'] possession." See Lopez, 777 F. Supp. 3d at 1108 ("While assumptions and inferences are allowed in calculating the amount in controversy where relevant evidence is not readily available to the party asserting CAFA jurisdiction, if an employer has information in its possession that makes an assumption unnecessary, it is unreasonable for the employer to ignore that information."); Woods v. C.H. Robinson Co., Inc., No. 25-CV-00294, 2025 WL 914762, at *5 (N.D. Cal. Mar. 26, 2025) (explaining that "[i]t makes sense to expect a defendant to introduce evidence of the length of employees' shifts" and finding that assumptions about meal and rest periods were unreasonable, because plaintiff did not allege how many qualifying shifts were worked and defendant did not offer any evidence about the class members' average shift lengths); see also Harris v. KM Indus., Inc., 980 F.3d 694, 702 (9th Cir. 2020) (holding that it was unreasonable to assume that the class members "worked shifts long enough to entitle them to meal and rest periods" when the defendant "offered no proof that all of the 442 Hourly Employee Class members worked sufficient shifts during the 39,834 workweeks to qualify them for meal and rest periods"); Perez, 131 F.4th at 808 (noting that it "may make sense" to expect defendants to "introduce evidence" of the number of employees in a wage-and-hour case, as the number can be "most easily determined by examining the defendant's employment records").

Even if the Pishko Declaration were to reasonably support defendants' meal and rest period calculations, its "substantial majority" statement cannot save the unreasonable assumptions underlying defendants' calculations for plaintiff's waiting time claim. Plaintiff seeks penalties for defendants' failure to timely pay earned wages at discharge, pursuant to California Labor Code §§ 201, 202, and 203. See Compl. ¶ 63. To calculate the amount in controversy for this claim, defendants rely on data related to the number of discharged employees and employees' average hourly rate. See Notice of Removal at 15.

Defendants also assume that (1) all discharged employees could receive waiting time penalties for up to the 30-day statutory maximum, and (2) all discharged employees are entitled to 8 hours of penalties for each of those 30 days. Id.

While courts have found that defendants' first assumption is reasonable, see, e.g., Nisbet, 2025 WL 1135091 at *5, their second assumption is not. See, e.g., id. Defendants again fail to use readily available data to determine the average or exact number of hours worked by all terminated employees identified by the Pishko Declaration. See id.; cf. Lopez v. Gen. Dynamics Info. Tech., Inc., No. 24-CV-01743, 2025 WL 2308098, at *5 (S.D. Cal. Aug. 11, 2025) (finding waiting time penalty calculations reasonable where defendants used the average number of hours worked per day by discharged employees). Moreover, the statement that the "substantial majority" of all employees worked 8-hour shifts cannot support the assumption that *all* of the discharged workers are entitled to 8 hours' wages for each day of penalties. While that statement may support an assumption that a *majority* of discharged employees are entitled to 8 hours a day in penalties, it does not support the premise that *all* discharged employees are entitled to such penalties. See id. ("'Many of which" suggests that not all shifts were more than 8 hours, but that at least the majority were."); Benitez v. Hyatt Corp., 722 F. Supp. 3d 1094, 1102 (S.D. Cal. 2024) ("[I]f many of the departed employees worked less than eight-hours per day, the total penalties to which those employees are entitled would be substantially reduced."); Robertson v. Paragon Sys., Inc., No. 25-CV-01012, 2025 WL 2814155, at *4 (N.D. Cal. Oct. 3, 2025) ("Defendants also failed to explain the basis for their assumption of an eight-hour shift for every former employee [and] provided no evidence that all '625 hourly, non-exempt California employees who separated from employment from 2022 through March 23, 2025' were either full-time employees, or employees who always worked eight-hour shifts.").

Finally, defendants do not set forth a reasonable calculation of attorneys' fees. Defendants apply the Ninth Circuit's 25% benchmark for attorneys' fees in a class action settlement, where attorneys' fees are paid out of a common fund. See Notice of Removal at 17; Lopez, 777 F. Supp. 3d at 1109. The case here, however, involves fee-shifting statutes that require a calculation of attorneys' fees pursuant to the lodestar method. See Lopez, 777 F. Supp. 3d at 1109. As the court in Lopez explained:

> "[W]hile using the 25% benchmark might make for a straight-forward calculation, it comes from a very different context." [Gurzenski v. Delta Air

> Lines, Inc., No. 221CV05959, 2021 WL 5299240, at *5 (C.D. Cal. Nov. 12, 2021)]. "[I]t makes sense to estimate the attorneys' fee for amount-in-controversy purposes *in the same manner* that it would be calculated under the fee-shifting statute upon a noticed motion for fees at the close of litigation." Id.
>
> . . . .
>
> As the court explained in Gurzenski, "the 25% benchmark from the class action settlement context is not a suitable proxy for estimating the amount put in controversy by the attorneys' fee claim in [a] fee-shifting case," especially in wage and hour cases like this one, because it may "substantially overestimate the attorneys' fee recoverable under the fee-shifting statutes." 2021 WL 5299240, at *5. Such cases "usually settle for significantly *less* than the entire amount in controversy calculated at the outset of the case based on all claims in issue." Id.
>
> . . . .
>
> In Fritsch v. Swift Transportation Co. of Arizona, LLC, a wage and hour class action removed pursuant to CAFA, the Ninth Circuit rejected the argument that attorneys' fees should be estimated at 25% by applying the Ninth Circuit's benchmark for common fund cases. 899 F.3d 785, 796 (9th Cir. 2018). The Court held that because "the defendant must prove the amount of attorneys' fees at stake by a preponderance of the evidence; [courts] may not relieve the defendant of its evidentiary burden by adopting a per se rule for one element of the amount at stake in the underlying litigation." Id. Just as in Fritsch, [defendants here] cannot establish the amount in controversy on attorneys' fees here by relying solely on the Ninth Circuit benchmark.

Id. Accordingly, defendants' calculation of the attorneys' fees in controversy here is based on an "inapplicable and unreasonable assumption." Id.

Because defendants' assumptions are "unreasonable on [their] face without comparison to a better alternative," the Court is "justified in simply rejecting [them]." See Jauregui, 28 F.4th at 996. Even if the Court were to solely reject defendants'

attorneys' fees calculation, the total calculation of the amount in controversy falls nearly $400,000 below the $5 million threshold. Accordingly, the Court finds that defendant has not met its burden to establish CAFA jurisdiction.

**B. Diversity Jurisdiction**

Plaintiff argues that defendants apply "the same faulty assumptions to [p]laintiff's individual claims as it did for the class claims." See Mot. at 24-25. Accordingly, plaintiff argues that defendants cannot establish that plaintiff's individual claims give rise to an amount in controversy that exceeds the $75,000 threshold for diversity jurisdiction. See id.; 28 U.S.C. § 1332(a). Plaintiff argues that defendants' errors are "particularly inexcusable" because defendants, "as the employer, ha[ve] ready access to all the facts, records, and information necessary to support their amount in controversy calculations." Mot. at 25.

Plaintiff also argues that even if the court accepts defendants' "unreasonable" violation rate assumptions, defendant cannot meet the $75,000 threshold without its unsubstantiated estimate of $54,000 in attorneys' fees. Id. Plaintiff argues that defendants' reliance on Novoselac v. Vuzem, No. 21-cv-08654, 2023 WL 3899011, *11 (N.D. Cal. June 7, 2023), to calculate attorneys' fees is misplaced because Novoselac was "an unrelated case" involving unrelated lawyers. Id. at 25-26. Moreover, plaintiff argues that defendant's calculation of attorneys' fees for plaintiff's individual claims fails to "take into account that any future attorney[s'] fees will be spread out across the class." Id. at 26.

In opposition, defendants argue that they calculate the value of plaintiff's individual claims using assumed violation rates that are reasonable based on plaintiff's allegations in the complaint. See Opp. at 21. Defendants also argue that their attorneys' fees' calculation reflects the value of "the attorney time reasonably associated with litigating [p]laintiff's individual claims through trial" and does not "rely on fees incurred solely for class certification or recovery on behalf of absent class members." Id. at 22. Defendants argue that plaintiff offers no evidence to suggest that either their attorneys' fee calculations or their valuations of plaintiff's individual claims are unreasonably high. Id. at 23-24.

In reply, plaintiff largely reiterates his earlier arguments with respect to defendants' valuation of plaintiff's individual claims. See Reply at 20-21. As to

attorneys' fees, plaintiff argues that Novoselac is not on point with the instant case because it involved federal *and* state wage and hour claims brought against six defendants. Id. at 21. Plaintiff contends that if the Court were to accept the analogy to Novoselac, "then any wage-and-hour case would potentially be deemed to meet the $75,000 jurisdictional threshold so long as there is at least $21,000 in controversy" with respect to plaintiff's underlying wage and hour claims. Id. at 21-22. As with the action's class claims, plaintiff also argues that defendant incorrectly asserts that plaintiff bears the evidentiary burden. Id. at 22.

The Court first looks to the face of the complaint to determine if the amount in controversy pled "to a legal certainty" meets the jurisdictional minimum for diversity jurisdiction. Sanchez, 102 F.3d at 402-404. If it is "unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold." Fritsch, 899 F.3d 785, 793 (9th Cir. 2018). Here, the complaint is silent as to the amount in controversy. See Compl. Accordingly, defendants bear the burden of establishing that plaintiff's individual claims place more than $75,000 in controversy.

In their notice of removal, defendants calculate that plaintiff's individual claims place a total of $78,648.80 in controversy. Notice of Removal at 21. Of that amount, $54,000 is attributed to plaintiff's attorneys' fees. Id. To reach that amount of attorneys' fees, defendants assume a "conservative rate" of $450 per hour and a "conservative estimate" of 120 hours of attorney time spent through trial. Id. (citing Novoselac, 2023 WL 3899011). Id.

The Court finds that defendants' calculation of plaintiff's individual attorneys' fees cannot stand, and accordingly, defendants fail to carry their burden of establishing that the plaintiff's individual claims exceed the $75,000 jurisdictional threshold. "[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy." Galt G/S v. JSS Scandinavia, 142 F.3d 1150, 1156 (9th Cir. 1998).

The Court agrees with plaintiff that Novoselac is not sufficiently analogous to bear defendants' burden. See Reply at 21-22. In addition to the fact that Novoselac involved different counsel and different claims, that case also required counsel to spend "the bulk of their time on [foreign] service of process and preparation of [a] motion for default

judgment.” Novoselac, 2023 WL 3899011, at *11. Such circumstances are not present in the instant case, at least not at this juncture. Even where defendants’ underlying assumptions are based on a matter previously litigated by the same plaintiff’s counsel, courts in the Ninth Circuit have been wary to accept the analogy. See, e.g., White v. Torrance Ref. Co. LLC, No. CV 23-3216, 2023 WL 8127342, at *1 (C.D. Cal. July 7, 2023) (“Concluding that this lawsuit will produce that figure in fees just because another case did so – whether or not that other case involved the same plaintiff's counsel – makes too many assumptions, at too early a stage of a case, about similarities between cases that otherwise may have nothing but counsel in common.”); Lopez, 777 F. Supp. 3d at 1111 (“It is not reasonable, however, for Advanced Drainage Systems to estimate the time necessary to litigate Lopez's individual claims based on an unrelated class action that was heavily litigated over five years and involved 16,500 class members . . . [the case] is not sufficiently analogous to this case . . .”). Instead, “the defendant must adequately analogize the facts, allegations, and circumstances of the cited cases to the instant matter in order to meet its burden.” Cf. Barnes v. Target Corp., No. EDCV2000831, 2020 WL 3469266, at *8 (C.D. Cal. June 25, 2020) (rejecting defendant’s reliance on attorneys’ fees awarded in other wage-and-hour class actions for the purposes of establishing CAFA jurisdiction). Because defendants have failed to adequately analogize Novoselac or any other case to the instant action, they fail to meet their burden to establish $54,000 in attorneys’ fees, and, accordingly, an amount in controversy of over $75,000.

Moreover, in the context of wage and hour class actions removed to federal court on the basis of diversity jurisdiction, some courts in Ninth Circuit require that defendants calculate “plaintiff's appropriate share of attorneys’ fees by distributing the total estimated fees on a pro rata basis amongst the named plaintiff(s) and class members.” See, e.g.,, Jurado v. Aequor Heathcare Servs., LLC, No. 221CV02633, 2021 WL 2178846, at *2 (C.D. Cal. May 27, 2021); Rosenwald v. Kimberly-Clark Corp., 152 F.4th 1167, 1179 (9th Cir. 2025) (“In a class action . . . ‘the potential attorneys' fees should be attributed pro rata to each class member.’” (quoting Goldberg v. CPC Int'l, Inc., 678 F.2d 1365, 1367 (9th Cir. 1982)) (citation modified)). Pursuant to this approach, courts observe that neither California Code of Civil Procedure § 1021.5 nor California Labor Code § 1194(a) permit an award of attorneys’ fees solely to the named plaintiff in a putative class action. See Jurado, 2021 WL 2178846, at *2; Green v. Flowers Bakeries Sales of Norcal, LLC, No. 25-CV-06679, 2025 WL 3102034, at *3 (N.D. Cal. Nov. 6, 2025). Accordingly, these courts have rejected the notion that defendants may “treat a putative [wage and hour] class action as if it were *not* a putative class action simply to

argue for an increased amount of attorney[s’] fees under-consideration for purposes of amount-in-controversy calculations as to the claims of the named plaintiff alone.” White, 2023 WL 8127342, at *1.

Under this approach, defendants still cannot demonstrate by a preponderance of the evidence that plaintiff’s individual claims place more than $75,000 in controversy. Accepting *arguendo* defendants’ valuations of plaintiff’s individual claims, defendants must prove that plaintiff’s claims place over $50,351.20 in attorneys’ fees in controversy “*per class member*.” See Rosenwald, 152 F.4th at 1179 (emphasis in original). Based on defendants’ estimate that the putative class is comprised of 2,384 members, defendants would need $120,037,260.80 in total attorneys’ fees to establish the necessary pro rata amount. See Notice of Removal at 12. This total amount of fees is more than ten times the amount of defendants’ original calculation. See id. at 18 (valuing the class attorneys’ fees at $1,151,912.25, including the now-rejected calculations for meal and rest period claims). Accordingly, the Court finds that defendants have failed to establish that more than $75,000 is in controversy with respect to plaintiff’s individual claims.

## V. CONCLUSION

In accordance with the foregoing, the Court **GRANTS** plaintiff’s motion to remand.

IT IS SO ORDERED.

| | 00 : 14 |
|---|---|
| Initials of Preparer | CMJ |